**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LONDON DIVISION**

IN RE

PINEVILLE COMMUNITY HOSPITAL ASSOCIATION, INC.      CASE NO. 18-61486

DEBTOR

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Computer Programs and Systems, Inc., and Evident, LLC's Renewed Motion to Allow and Compel Payment of Administrative Expense Claim [ECF No. 282] and related briefing [ECF No. 392] and the Chapter 7 Trustee's Objection [ECF No. 303] and related briefing [ECF Nos. 304 & 395]. A hearing was held on January 16, 2020. The request for an administrative expense claim pursuant to 11 U.S.C. § 503(b)(1)(A) is denied.

**I.     Relevant Facts and Procedural History.**

**A.     The License and General Support Agreements.**

On October 5, 1998, the Debtor Pineville Community Hospital Association, Inc. and Computer Programs and Systems, Inc. ("CPSI")[1] executed a License Agreement and General Support Agreement ("License Agreements"). [ECF No. 282-3.] The License Agreements require a monthly fee of $22,651.00 for the rights to, and support for, an electronic health record system for the Debtor's hospital (the "Electronic Records System"). [*Id.*] The Debtor fell behind on payments and owed $703,296.18 as of August 4, 2017. [ECF No. 282-2 at ¶ 4.] The parties worked out a payment plan requiring monthly installments for the past due amount. Also,

---

[1] Computer Program Systems, Inc. was created to provide electronic records systems and related support to rural and community hospitals. CPSI created Evident, LLC in 2015 to market its product and provide support. [ECF No. 282-2 at ¶ 4, n. 2.] Computer Program Systems, Inc. and Evident, LLC are referred to collectively as "CPSI."

1

the Debtor reaffirmed its obligations under the License Agreements, including the ongoing payment obligation.  [ECF No. 282-4.]

### B.    The May 2018 Sale to PMC.

On or around May 7, 2018, the Debtor sold the hospital's personal property to Pineville Medical Center ("PMC") pursuant to an amended and restated asset purchase agreement ("2018 May APA").  [ECF No. 90-1 & 90-2.]  Schedule 2.1(f)(1) to the May 2018 APA is a list of the contracts assumed by PMC that includes the License Agreements.  [ECF No. 304-1.]  Similarly, the list of assumed liabilities on Schedule 2.3 to the May 2018 APA includes $737,348.00 owed to CPSI.  [ECF No. 304-2.]

The Debtor and PMC also entered into a Facilities Lease Agreement for hospital real property and improvements.  [ECF No. 90-3.]  Thereafter, PMC took over operation of the hospital and used the Electronic Records System.

On August 1, 2018, CPSI notified PMC that it was in breach and the License Agreements were terminated effective August 10, 2018.  [ECF No. 395-1.]  On September 13, 2018, PMC sued CPSI in Bell County, Kentucky, to prevent termination of the License Agreements.  The litigation was subsequently removed to the United States District Court for the Eastern District of Kentucky and styled *Pineville Medical Center, LLC v. Computer Programs and Systems, Inc. and Evident, LLC*, Case No. 6:18-CV-00239-CHB.

On February 15, 2019, the District Court granted PMC's request for injunctive relief and ordered CPSI to continue providing PMC access to, and support for, the Electronic Records System.  PMC was also ordered to pay CPSI a monthly support fees of $22,651.00.  [ECF No. 304-4.]  Thereafter, CPSI continued to provide access to the Electronic Records System and

related support.  [ECF No. 282-2 at ¶ 4.]  PMC also paid the monthly support fees to CPSI through May 2019.  [*Id*. at ¶ 5.]

### C.    The Debtor's Chapter 7 Bankruptcy.

On November 29, 2018, the Debtor filed its chapter 7 bankruptcy petition.  [ECF No. 1.] J. Claire Edwards was appointed the chapter 7 trustee.  [ECF No. 4.]

The only asset listed on Schedules A/B is the real estate where the hospital is located. [ECF No. 23.]  Schedule G, Executory Contracts and Unexpired Leases, included the May 2018 APA.  [*Id.*]  Schedule G did not list the License Agreements, but CPSI is a creditor with a nonpriority unsecured claim on Schedule F.  [*Id*.]  CPSI filed a nonpriority unsecured proof of claim on April 2, 2019, in the amount of $910,250.51.  [*See* Proof of Claim No. 77.]

### D.    The June 2019 Transfer and Assignment to PCHC.

On March 11, 2019, the Chapter 7 Trustee filed Adversary Proceeding No. 19-6007 against PMC seeking turnover of unpaid rent.  [ECF No. 90; Adv No. 19-6007, ECF No. 1.] PMC answered and raised affirmative defenses, including setoff and recoupment. [Adv. No. 19-6007, ECF No. 8.]  The Debtor and PMC resolved their disputes and the adversary proceeding was dismissed on June 10, 2019.  [*Id*. at ECF Nos. 37 & 38.]

The settlement between the Debtor and PMC contemplates transfer of operations of the hospital and the related assets held by PMC to allow a going concern sale.  [ECF No. 133, Exh. A.]  PMC and the Estate would each receive fifty percent of the net cash proceeds from the sale of the personal property.  [*Id*.]  The settlement was approved on June 3, 2019.  [ECF No. 147.]

The Trustee also needed to assure continued operation of the hospital while the assets were marketed and sold.  So the Trustee, PMC, and Pineville Community Health Center, LLC

("PCHC") entered into a series of documents that would allow the hospital to remain open and operating and give the parties time to complete a sale. [*See* ECF No. 304.] PCHC is a Kentucky non-profit corporation created by the Mayor of Pineville, among others, to lease and operate the hospital pending the sale.

The Asset Purchase Agreement described the transfer of assets to PCHC and the Trustee to accomplish this result. [ECF No. 304-6 (the "June 2019 APA").] PCHC agreed to temporarily lease the hospital real property and improvements from the Trustee and contract to provide critical staff to continue all services pending a sale. [ECF No. 304-6.] The Trustee agreed to hold non-operating assets as a liquidating fiduciary. [*Id.*]

The June 2019 APA further provides that "PCHC will be assigned certain leases and contracts for the sole purpose of managing and operating the Hospital for a 60-day period." [*Id.*] In connection therewith, PCHC and PMC entered into the Assignment and Assumption Agreement to document the transfer of the assumed contracts identified in the June 2019 APA. [ECF No. 304-5.] The License Agreements are listed as agreements assigned to PCHC to allow it to operate the hospital. [*Id.*]

### E.    The § 363 Sale and Request for an Administrative Expense Claim.

An order confirming the sale of substantially all the Debtor's assets was entered on August 7, 2019. [ECF No. 252.] The August 7 Order approved the winning bid but reserved the right to confirm a backup bid set forth in the Trustee's report of sale. [*Id.*] The winning bidder failed to perform, so an Order was entered on August 11, 2019, confirming the backup bid and authorizing the mortgage creditors to submit competing bids. [ECF No. 257.] The August 11 Order prospectively approved a sale to the mortgage creditors if successful in a competing bid. [*Id.*]

First State Bank of the Southwest exercised its option to submit a competing bid and was declared the winning bidder. [ECF Nos. 265 & 269.] The sale of the Debtor's real and personal property to First State Bank closed on September 4, 2019. [ECF No. 270.] On September 17, 2019, the Trustee filed a Notice that she would assume a parking lot lease with First State Bank, but otherwise would not assume any other executory contracts or unexpired leases. [ECF Nos. 270, 272 & 276.]

On September 24, 2019, CPSI filed its application for an administrative expense claim of $97,255.00 for May, June, July, August and September 2019. [ECF No. 282.][2] The Trustee objected and argued the Estate did not enter into any transactions with CPSI. The Trustee contends that PCHC operated the hospital and received the benefit of CPSI's services. [ECF No. 304.]

Following initial briefing, an Agreed Order was entered allowing the parties to supplement the record and setting a status hearing to determine "whether further proceedings are necessary, such as a discovery schedule, supplemental briefing, or an evidentiary hearing." [ECF No. 356.] The status hearing was held on January 16, 2020. [ECF No. 401.] CPSI confirmed that its request for an administrative expense claim is limited to services provided in June, July, August, and September 2019. It also alternatively argued that the Trustee induced it to provide services to benefit the Estate. [ECF No. 395-1.]

The matter was taken under submission.

---

[2] CPSI originally filed the application on September 20, 2019, but the application was overruled for procedural reasons. [ECF Nos. 277 & 281.]

**II.    Discussion.**

    **A.    CPSI Must Prove A Transaction With the Estate That Directly and Substantially Benefitted the Estate.**

A creditor is entitled to an allowed administrative expense claim for "the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). The rationale is "to facilitate the continued operation (i.e., going concern) of debtors-in-possession 'by encouraging third parties to provide those businesses with necessary goods and services' that enable the maximization of value for creditors of the estate upon liquidation." *In re HNRC Dissolution Co.*, 371 B.R. 210, 224 (Bankr. E.D. Ky. 2007) (citing *In re United Trucking Serv.,* 851 F.2d 159, 161 (6th Cir.1988)), *aff'd* 536 F.3d 683 (6th Cir. 2008). Section 503(b)(1)(A) is narrowly construed because the overall goal is to keep administrative expenses to a minimum and preserve the estate for the benefit of all creditors. *Id.*

The Sixth Circuit applies a two-part test to determine whether a debt qualifies as an "actual, necessary" expense: (1) whether the debt arose from a transaction with the bankruptcy estate and (2) whether the debt directly and substantially benefitted the estate. *Pension Benefit Guar. Corp. v. Sunarhauserman, Inc. (In re Sunarhauserman, Inc.)*, 126 F.3d 811, 816 (6th Cir. 1997). The movant bears the burden of proof by a preponderance of the evidence. *Id.*

CPSI has not met its burden to show it is entitled to an administrative expense claim. CPSI cannot show the debt for license fees from May to September 2019 arises from a transaction with the Estate. Further, the services provided by CPSI directly benefitted PCHC, the operator of the hospital. At most, the Debtor received an indirect benefit. The Estate is not liable simply because it benefitted from a going concern sale of the hospital.

**B.    There is No Post-petition Transaction with the Debtor.**

**1. The License Agreements Were Not Contracts with the Debtor on the Petition Date.**

CPSI contends that the transaction with the Debtor is based on the License Agreements, which it also argues are executory contracts. The record does not support this argument.

The License Agreements were initially with the Debtor, but the Debtor's interest was assumed by PMC pursuant to the May 2018 APA. CPSI attempts to deny the validity of the transfer of the License Agreements to PMC because it did not give consent. This argument ignores the actions of CPSI after the assignment, which confirm CPSI accepted PMC as the licensee.

The Debtor turned over operations of the hospital to PMC in June 2018. PMC continued using the Electronic Records System, CPSI provided support, and CPSI communicated directly with PMC. The August 1, 2018 breach and termination notice confirms CPSI expected payments from PMC and declared a breach because PMC did not make required payments. [ECF No. 395-1.] The notice letter also recognized PMC had failed to make payments under a separate promissory note for the past due obligations. [*Id.*]

Further, the Debtor was not made a party to the 2018 federal lawsuit by PMC or CPSI. The federal district court ordered CPSI to continue to provide services pursuant to the License Agreements. PMC was required to continue to make payments.

CPSI's actions after the 2018 assignment belie its arguments that it did not consent to the assignment to PMC. *See, e.g., Walls v. Petrohawk Prop's, LP*, No. 4:11-CV-00199-JMM, 2012 WL 113266, at *4 (E.D. Ark. Jan. 13, 2012), *aff'd*, 812 F.3d 621 (8th Cir. 2015) ("The principle is elemental that one party to a contract who, with knowledge of a breach by the other party,

continues to accept benefits under the contract, and suffers the other party to continue in performance thereof, waives the right to insist on the breach."); *Sharp v. Valley Forge Life Ins. Co.*, 490 F. Supp. 2d 909, 914 (E.D. Tenn. 2007) (generally accepting benefits under contract with knowledge of breach waives breach); *Conner v. Withers*, 49 S.W. 309, 310 (Ky. 1899) (acceptance of rent from assignee of contract treated as recognition of assignment to assignee).

The treatment of the License Agreements by all parties also justified their omission from the Debtor's schedules. After assignment, the Debtor had no legal or equitable interest in the License Agreements to protect. *See* 11 U.S.C. § 541(a)(1). In bankruptcy terms, the License Agreements were not executory contracts because the Debtor had no unperformed obligations on the petition date. *See Terrell v. Albaugh (In re Terrell)*, 892 F.2d 469, 471 n. 2 (6th Cir. 1989) (defining an executory contract as a contract that is so far unperformed that the failure of either party to complete performance would constitute a material breach excusing the performance of the other); *Bronner v. Chenoweth-Massie P'ship (In re Nat'l Fin. Realty Trust)*, 226 B.R. 586, 589 (Bankr. W.D. Ky. 1998) (same); *Cox v. Philbeck (In re Philbeck)*, 145 B.R. 870, 871-872 (Bankr. E.D. Ky. 1992) (same).

### 2. The Trustee Did Not Accept Any Contractual Duty to CPSI Post-petition.

The June 2019 APA and related documents did not create a post-petition contractual relationship between CPSI and the Debtor. The June 2019 transaction documents reflect an assignment of the License Agreements directly from PMC to PCHC, the operator of the hospital and the party that needed the Electronic Records System. [*See* ECF No. 304-5.] The Trustee was not a party to the Assignment and Assumption Agreement. [*Id.*]

Throughout the case, the Trustee has not attempted to operate the hospital and the June 2019 transaction documents show she would not take on those responsibilities during the sale

8

process. For example, the Trustee did not agree to assume any liabilities in the June 2019 APA. Schedule 1.4, Assumed Liabilities, provides: "None. The Bankruptcy Court did not authorize the Trustee to assume any liabilities of the Seller [PMC] and the Order Approving Compromise specifically provides that the Trustee is not operating the Hospital." [ECF No. 304-7.]

The Order referenced in Schedule 1.4 indicates that the "Trustee is preserving and protecting assets and is not operating a hospital or healthcare facility, is not making business decisions with regard to the hospital, and not hiring, terminating, or taking any other action with employees." [ECF No. 147.] Operating the hospital or structuring the sale any other way might have risked violation of federal and state health care laws and regulations. [*Id.*]

The transaction documents and orders in the record confirm PCHC was the sole operator of the hospital. Further, PCHC was responsible for payment of operating expenses. The record shows the City of Pineville loaned PCHC money to fund operations during the pre-sale period. [*See* ECF Nos. 209 & 228.] PCHC used those funds for payroll and operational expenses without input from the Trustee. The Trustee's only role was to request a surcharge to reimburse the City for financing PCHC's operating costs. [*Id.*]

CPSI also dealt directly with PCHC as the operator of the hospital and as licensee. During the interim period of operations, CPSI agreed, at PCHC's request, to forbear from taking steps to discontinue services. [ECF Nos. 392-1 & 395-4.] As a result of those negotiations, CPSI accepted a reduced service fee of $10,000.00 from PCHC. [*Id.*] CPSI cannot ignore its own actions to improve its position against other creditors. Administrative claims are the exception, not the rule.

### C. An Inducement Claim Does Not Create the Right to an Administrative Priority Claim Against the Estate.

In the alternative, CPSI argues that conversations with the Trustee induced it to continue to provide services and this inducement created a transaction with the Estate. CPSI contends that additional evidence is necessary to prove this allegation. Additional evidence of inducement is unnecessary because this argument cannot succeed on the record.

The record reflects that Trustee asked CPSI to "work with them" while the Trustee, the City, and PCHC worked collectively to preserve the hospital and sell the Estate's assets. [ECF No. 392 at 2, 11.] But CPSI does not argue the Trustee agreed to make the payments. This position is consistent with the prior discussion that found the Trustee would not operate the hospital and she had no obligation to make the payments due under the License Agreements post-petition. Further, it is reasonable to conclude the Trustee would have sought Court approval for such an agreement, as she did with the surcharge to repay the City of Pineville for the operating loan to PCHC. *See supra* at Part I.B.2.

The Trustee did not operate the hospital and did not use the Electronic Records System, so she did not directly benefit. It was PCHC that needed the Electronic Records System and had to make the payments for the License Agreements. The Estate may have indirectly benefitted from CPSI's services in maintaining hospital operations pending a sale, but this type of indirect benefit is not enough to satisfy the rigorous test for administrative priority. *See In re Patient Educ. Media, Inc.*, 221 B.R. 97, 102 (Bankr. S.D.N.Y. 1998) (holding an estate is only liable for an administrative expense claim to the extent that it uses the goods or services); *see also Hopkins v. Idaho State Univ. Credit Union (In re Herter)*, 464 B.R. 22, 32 (Bankr. D. Idaho 2011); *In re Franklin*, 284 B.R. 739, 744 (Bankr. D.N.M. 2002).

Administrative expense priority is not justified for this type of claim and this creditor is not allowed to by-pass unsecured, non-priority claims on these facts.

### III. Conclusion.

Based on the foregoing, it is ORDERED that Computer Programs and Systems, Inc., and Evident, LLC's Renewed Motion to Allow and Compel Payment of Administrative Expense Claim [ECF No. 282] is DENIED.

11

___

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*Gregory R. Schaaf*
**Bankruptcy Judge**
**Dated: Friday, February 7, 2020**
**(grs)**